David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
dbower@monteverdelaw.com

*Counsel for Plaintiff Robert Grier*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ROBERT GRIER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FINJAN HOLDINGS, INC,. DANIEL CHINN, ERIC BENHAMOU, GLENN DANIEL, JOHN GREENE, HARRY KELLOGG, GARY MOORE, ALEX ROGERS, and MICHAEL SOUTHWORTH,<br><br>Defendants. | Civil Action No. 5:20-cv-4343<br><br>**COMPLAINT**<br>1. **Violation of Exchange Act §14(e)**<br>2. **Violation of Exchange Act §20(a)**<br>3. **Brach of Fiduciary Duties**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Robert Grier ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

# NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff against Finjan Holdings, Inc. ("Finjan" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Finjan, the "Defendants") for their violations of Sections 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(e) and 78t(a), respectively. Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law. Plaintiff's claims arise in connection with the proposed tender offer ("Tender Offer") by Fortress Investment Group LLC, through its affiliates (collectively "Fortress"), to acquire all of the issued and outstanding shares of Finjan (the "Proposed Transaction").

2. On June 10, 2020, Finjan entered into an agreement and plan of merger (the "Merger Agreement"), whereby shareholders of Finjan common stock will receive $1.55 in cash for each share of Finjan stock they own (the "Offer Price").

3. On June 24, 2020, in order to convince Finjan shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC"). In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the Company's financial projections; (ii) the valuation analyses performed by the Company's financial advisor, Atlas Technology Group LLC ("Atlas"); and (iii) the background of the offer.

4. The Tender Offer is scheduled to expire at 12:00 midnight, New York City time, at the end of July 22, 2020 (one minute after 11:59 p.m., New York City time, on July 22, 2020) (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the forthcoming Expiration Date so they may make an informed determination on whether to tender their shares.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Finjan

shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

**JURISDICTION AND VENUE**

6. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e) and 20(a) of the Exchange Act.

7. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. At 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Finjan maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**CLASS ACTION ALLEGATIONS**

10. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Finjan (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

11. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of June 23, 2020, there were 27,832,485 shares of Finjan common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Finjan will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

    i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Recommendation Statement, in violation of Sections 14(e) of the Exchange Act;

    ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement;

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

   e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

   f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

   g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## PARTIES

12. Plaintiff is, and at all relevant times has been, a shareholder of Finjan.

13. Defendant Finjan is a Delaware corporation and maintains its principal executive office at 2000 University Avenue, Suite 600, East Palo Alto, California 94303. Finjan is a cybersecurity firm with a strong portfolio of patents focusing on software and hardware technologies used to proactively detect previously unknown and emerging threats on a real-time, behavior-based basis. The Company's common stock trades on the Nasdaq under the ticker symbol "FNJN".

14. Individual Defendant Daniel Chinn is a director of Finjan and is the Chairman of the Board.

15. Individual Defendant Eric Benhamou is, and has been at all relevant times, a director of the Company.

16. Individual Defendant Glenn Daniel is, and has been at all relevant times, a director of the Company.

17. Individual Defendant John Greene is, and has been at all relevant times, a director of the Company.

18. Individual Defendant Harry Kellogg is, and has been at all relevant times, a director of the Company.

19. Individual Defendant Gary Moore is, and has been at all relevant times, a director

of the Company.

20. Individual Defendant Alex Rogers is, and has been at all relevant times, a director of the Company.

21. Individual Defendant Michael Southworth is, and has been at all relevant times, a director of the Company.

22. The defendants identified in paragraphs 13-21 are collectively referred to as the "Defendants".

## SUBSTANTIVE ALLEGATIONS

### I.  Background and the Proposed Transaction

23. Finjan operates a cybersecurity business focused in intellectual property licensing and enforcement, mobile security application development, and investing in cybersecurity technologies and intellectual property. Licensing and enforcement of the Company's cybersecurity patent portfolio is operated by its subsidiary Finjan, Inc. (Finjan). Through Finjan, the Company owns a portfolio of patents, related to software and hardware technologies that detect malicious code and thereby protect end users from identity and data theft, spyware, malware, phishing, Trojans and other Web and network threats. The Company now derives much of its revenue from the enforcement of those patents in patent infringement litigation.

24. Fortress operates as an investment management company, which raises, invests, and manages assets such as range of credit and real estate, private equity, and permanent capital investment strategies. Fortress Investment Group serves institutional clients and private investors worldwide with headquarters at 1345 Avenue of the Americas, 46th Floor, New York, NY 10105.

25. On June 10, 2020, Finjan issued a press release announcing the Proposed Transaction, which stated in relevant part:

**Finjan Enters into Agreement to be Acquired by Affiliates of Fortress in an All Cash Transaction**

EAST PALO ALTO, Calif., June 10, 2020 - Finjan Holdings, Inc. (NASDAQ: FNJN) (Finjan) today announced that it has entered into a definitive agreement (the "Merger Agreement") pursuant to which affiliates of Fortress Investment Group LLC (collectively "Fortress") would acquire all outstanding shares of Finjan common stock for $1.55 per share in cash (the "Transaction"), representing an aggregate equity value of approximately $43.9 million. Finjan, a recognized

pioneer in the development of cybersecurity technologies, will maintain its brand and business model post-transaction, licensing and enforcing a substantial patent portfolio that has been consistently upheld by courts and patent offices.

Under the terms of the Merger Agreement, Fortress will commence a tender offer to purchase all the outstanding shares of Finjan's common stock for $1.55 per share in cash. The closing of the tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Finjan's common stock. Following successful completion of the tender offer, Fortress will acquire all remaining shares not tendered in the offer through a merger at the same price as in the tender offer.

Finjan's Board of Directors unanimously approved the Merger Agreement and recommends that shareholders tender their shares. In connection with the Merger Agreement, directors and officers of the Company, together with shareholders, in the aggregate holding approximately 28 percent of the outstanding shares of common stock of the Company, have agreed to tender their shares in the offer pursuant to support agreements.

The Transaction is not subject to any financing condition and is expected to close in the third quarter of 2020.

Daniel Chinn, Chairman of Finjan Holdings, stated, "The Board of Directors thoroughly evaluated all of our strategic options, giving careful consideration to the current unprecedented and uncertain environment, and we believe that this transaction will provide the best outcome for Finjan and its stockholders. We appreciate the continued patience of our investors and employees and thank them for their support. We recommend all shareholders to tender their shares in the offer."

Phil Hartstein, President and Chief Executive Officer of Finjan, commented, "We believe that this transaction strengthens our ability to continue executing our business model, particularly while facing unpredictable timelines in the court system and a challenging macro-economic environment. The acquisition enables Finjan to continue to pursue our licensing mission and expand our reputation and credibility on policy related initiatives, while providing us greater resources and opportunities as a Fortress portfolio company."

Eran Zur, Managing Director and head of the Fortress IP Finance Group, commented: "Finjan pioneered many of the technologies that underpin how companies protect their networks from cyberattacks. Finjan had the foresight to patent its innovations and its patent portfolio has been repeatedly upheld by courts and patent offices while being widely licensed to industry players. Fortress and Finjan share a strong belief in the importance of preserving a patent system that allows innovators to earn a fair return on their investment and we look forward to supporting Finjan as it moves forward with its licensing program."

Atlas Technology Group, LLC is acting as exclusive financial advisor to Finjan, and Perkins Coie LLP and GCA Law Partners LLP are serving as legal advisors to Finjan. Sidley Austin LLP is serving as legal advisor to Fortress.

26. The Offer Price is inadequate consideration for Finjan shareholders and does not reflect fair value for the Company. In fact, the $1.55 Offer Price represents a 35% *discount* to the Company's high trading price at the beginning of the year. It is therefore imperative that

7

CLASS ACTION COMPLAINT

shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Recommendation Statement, which is necessary for shareholders to make an informed decision on whether to tender their shares in the Tender Offer.

**II.     The Materially Incomplete and Misleading Recommendation Statement**

27.   On June 24, 2020, Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC.  The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation Statement misrepresents or omits material information that is necessary for Finjan shareholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of candor/disclosure.

28.   First, the Recommendation Statement omits Finjan's unlevered free cash flow projections for 2020-2024 and all other projections for 2020-2024 required to calculate the unlevered free cash flows, including complete revenue projections, expenses (operating, litigation, and other), the likelihood of success and the expected costs of the Company's patent infringement litigation, and any other projections such as capital expenditures (the "Omitted Projections"). The Omitted Projections were prepared through a collaborative effort by Atlas and Company Management, approved as reasonable by Company Management, and approved by Company management for use in the financial analyses underlying Atlas' fairness opinion. However, Defendants elected to exclude the Omitted Projections from the Recommendation Statement, despite the fact that they simultaneously elected to include a purported "summary" of Atlas' *Discounted Cash Flow Analysis* and the Management Projections.

29.   The Recommendation Statement describes Atlas' fairness opinion and the various valuation analyses performed in support of its opinion.  Defendants concede the materiality of this information in citing Atlas' fairness opinion among "the material information and factors and analyses considered by the Board in reaching its recommendation." Recommendation Statement at 29. However, the description of Atlas' fairness opinion and analyses fails to include key inputs

8

and assumptions underlying the analyses. Without this information, Finjan shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight—*if any*—to place on Atlas' fairness opinion in determining whether to tender their shares in the Tender Offer. *See* Recommendation Statement at 31 ("**Considering the data set forth in the tables without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of the financial analyses performed by Atlas.**") (emphasis in original). This omitted information, if disclosed, would significantly alter the total mix of information available to Finjan shareholders.

30. In summarizing Atlas' *Discounted Cash Flow Analysis* the Recommendation Statement fails to disclose the unlevered free cash flow projections. It is indisputable that the unlevered free cash flow projections were the most important input in Atlas' *Discounted Cash Flow Analysis*—the entire analysis is based upon discounting the cash flows to present value. As such, these key inputs are material to Finjan shareholders, and their omission renders the summary of Atlas' *Discounted Cash Flow Analysis* incomplete and misleading.

31. As Professor Davidoff explained in one of the most thorough law review articles analyzing the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions:

> A fairness opinion's worth ultimately lies in the reliability and accuracy of its underlying valuation analyses. This is the realm of finance - and academics have made significant strides in the previous decades to develop techniques by which a theoretically reliable range of values can be achieved. However, there is still an element of subjectivity present in the choice and application of these methods. The end-result is to provide the preparer discretion to effect the outcome of a valuation and a diminished ability for outsiders to make comparative assessments of analyses.
>
> There are a number of different underlying valuation analyses upon which a fairness opinion can rest. The most common and accepted techniques are discounted cash flow, comparable companies, premium, break-up, and liquidation analysis. The preparer of a fairness opinion will typically utilize a weighted combination of these to arrive at a fairness conclusion. The choice of a particular analysis to employ and the weight given to each is partially subjective and depends upon the asset being valued and the relevant circumstances. For example, in the corporate control transaction paradigm the most important analysis is, absent unusual circumstances, the discounted cash flow calculus. However, in the investment banking community, there are no uniform, specific, and objective

> guidelines as to the exact mix and weight to assign to each of these methods to arrive at fairness.
>
> Each of the techniques in and of themselves is also prone to subjectivity. For example, a discounted cash flow analysis is conducted by discounting back at a chosen discount rate the projected future free cash flows and terminal value of an asset. In performing this analysis there are three central choices, which must be made, each of which can significantly affect the final valuation. These are the correct forecasted free cash flows to utilize, the appropriate discount rate, and the terminal value of the asset. There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.

Steven M. Davidoff, *Fairness Opinions*, 55 Am. U. L. Rev. 1557, 1573-78 (2006).

32. Without, the unlevered free cash flow projections, Finjan shareholders cannot: evaluate for themselves the reliability of Atlas' *Discounted Cash Flow Analysis*; make a meaningful determination of whether the implied present values per share reflect the true value of the Company or are the result of Atlas' unreasonable judgment; or make an informed decision regarding whether to tender their shares in the Tender Offer.

33. The Recommendation Statement also fails to disclose the liquidation analysis performed by Company management in April 2020. This analysis was instrumental in the Board's rejection of Party B's $1.50 offer. As such, it is important to Finjan shareholders and must be disclosed.

34. If a Recommendation Statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by Atlas and the Board, but have failed to disclose the Omitted Projections and liquidation analysis. Thus, their omission renders the summaries of the Management Projections and the valuation analyses underling Atlas' fairness opinion misleadingly incomplete.

35. Second, the Recommendation Statement reveals that members of the Board have equity interests, restricted stock units, and stock options in the Company, but fails to disclose the amount each Board member stands to receive upon the consummation of the Proposed

Transaction. The interests of director in a transaction is information that would undoubtedly be useful for a shareholder when deciding the fairness of that transaction. Therefore, the omission of this material information renders the corresponding disclosures in the Recommendation Statement misleading.

36. In sum, the omission and/or misstatement of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act and in breach of the duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and other Finjan shareholders will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. Defendants caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

39. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

40. Defendants violated this clause of Section 14(e) because they negligently caused or allowed the Recommendation Statement to be disseminated to Finjan shareholders in order to solicit them to tender their shares in the Tender Offer, and the Recommendation Statement contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

41. Defendants negligently omitted the material information identified above from the Recommendation Statement or negligently failed to notice that such material information had been omitted from the Recommendation Statement, which caused certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading. As directors and officers of Finjan, the Individual Defendants had a duty to carefully review the Recommendation Statement before it was disseminated to the Company's shareholders to ensure that it did not contain untrue statements of material fact and did not omit material facts. The Individual Defendants were negligent in carrying out their duty.

42. Finjan is imputed with the negligence of the Individual Defendants, who are each directors and/or senior officers of Finjan.

43. As a direct result of Defendants' negligent preparation, review, and dissemination of the false and/or misleading Recommendation Statement, Plaintiff and other Finjan shareholders are impeded from making a decision on a fully informed basis and are induced to tender their shares and accept the inadequate Merger Consideration in connection with the Proposed Transaction. The false and/or misleading Recommendation Statement used to solicit the tendering of shares impedes Plaintiff and other Finjan shareholders from making a fully informed decision regarding the Tender Offer and is an essential link in consummating the Proposed Transaction, which will deprive them of full and fair value for their Finjan shares. At all times relevant to the dissemination of the materially false and/or misleading Recommendation Statement, Defendants were aware of and/or had access to the true facts concerning the process involved in selling Finjan, the projections for Finjan, and Finjan's true value, which is greater than the Merger Consideration Finjan's shareholders will receive.

44. The misrepresentations and omissions in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in the Tender Offer. In addition, a reasonable investor would view a full and

accurate disclosure as having significantly altered the "total mix" of information made available in the Recommendation Statement and in other information reasonably available to shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Finjan within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Finjan and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and/or misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Recommendation Statement.

49. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Recommendation Statement did not omit any material information or contain any materially misleading statements.

53.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Recommendation Statement to be disseminated to Plaintiff and the Company's other public shareholders.

54.     The misrepresentations and omissions in the Recommendation Statement are material, and Plaintiff will be deprived of his right to make an informed decision on whether to tender his shares if such misrepresentations and omissions are not corrected prior to the Expiration Date. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to fully informed corporate suffrage—the harm suffered is an individual and irreparable harm.

55.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, until Defendants disclose the material information identified above that has been omitted from the Recommendation Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  June 29, 2020                                         Respectfully submitted,

**OF COUNSEL**                                                */s/ David E. Bower*
                                                              David E. Bower

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde                                            David E. Bower SBN 119546
The Empire State Building                                     **MONTEVERDE & ASSOCIATES PC**
350 Fifth Avenue, Suite 4405                                  600 Corporate Pointe, Suite 1170
New York, New York 10118                                      Culver City, CA 90230
Tel:  212-971-1341                                            Tel: (213) 446-6652
Fax:  212-202-7880                                            Fax: (212) 202-7880
jmonteverde@monteverdelaw.com                                 dbower@monteverdelaw.com

*Counsel for Plaintiff*                                       *Counsel for Plaintiff*